# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| J&B WEST ENTERPRISES,<br>    Plaintiff,<br><br>    v.<br><br>AMERICAN INTERSTATE<br>INSURANCE COMPANY,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) CASE NO. 3:20-CV-00015-MGG<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

Ripe before the Court in this declaratory judgment action are cross motions for summary judgment and a motion to compel discovery filed by Plaintiff/ Counterclaim-Defendant J&B West Enterprises, LLC ("J&B West"). Additionally, J&B West filed two motions to strike related to its motion to compel. The Court conducted a telephonic conference related to the pending motions on August 18, 2020, and the parties confirmed that the motion to compel would be mooted if the Court were to grant Defendant/Counterclaimant American Interstate Insurance Company's ("American Interstate's") Motion for Summary Judgment. The undersigned issues the following opinion and order granting summary judgment to American Interstate pursuant to the consent of the parties and 28 U.S.C. § 636(c).

## I.   RELEVANT BACKGROUND

### A.   Procedural Posture

J&B West filed its Complaint in Superior Court No. 2 of LaPorte County, Indiana on December 6, 2019. Through its Complaint, J&B West alleges that American Interstate

is not entitled to recover additional insurance premiums for J&B West's subcontractors' employees (Count I), and that American Interstate acted in bad faith when demanding such premiums from J&B West (Count II). [DE 7 at 1–5]. J&B West requests the Court enter a declaratory judgment in its favor as to Counts I and II. [DE 7 at 5–6].

American Interstate removed the action to this Court on January 6, 2020, alleging subject matter jurisdiction based on the parties' diversity of citizenship. Jurisdiction is proper in this action under 28 U.S.C. § 1332(a) because it is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000. [*See* DE 1 at 2].

American Interstate's counterclaim, filed on February 3, 2020, alleges that J&B West breached the Policy between the two parties when it failed to pay the required insurance premiums (Count I). [DE 10 at 15]. Additionally, American Interstate seeks a declaratory judgment stating (1) that American Interstate is legally entitled to the premium payments for J&B West's subcontractors' employees, and (2) that American Interstate did not act in bad faith in its attempts to collect the aforementioned premiums (Count II). [DE 10 at 15–16].

After completing some but not all discovery, J&B West filed its instant Motion for Partial Summary Judgment seeking declaratory judgment in its favor on both of its claims. American Interstate filed its own Motion for Summary Judgment seeking declaratory judgment in its favor on all claims.

**B.     Facts**

The essential facts are not in dispute. Where facts are in dispute, this Court has determined that the disputed facts are either not material or has chosen to address such disputes in the Court's substantive analysis of the issues.

American Interstate issued a policy of insurance ("the Policy") to J&B West effective from May 15, 2018, through May 15, 2019. [DE 32-2 at 8]. Part One of the Policy, titled "WORKERS' COMPENSATION INSURANCE," states that "[American Interstate] will pay promptly when due the benefits required of [J&B West] by the workers compensation law." [DE 32-2 at 13]. Part One additionally states that "[t]his workers compensation insurance applies to bodily injury by accident or bodily injury by disease." [DE 32-2 at 13]

Part Two of the Policy, titled "EMPLOYER'S LIABILITY INSURANCE," states that "[American Interstate] will pay all sums that [J&B West] legally must pay as damages because of bodily injury to [J&B West's] employees, provided the bodily injury is covered by this Employers liability insurance." [DE 32-2 at 14]. However, Part Two of the Policy excludes explicitly "[a]ny obligation imposed by a *workers compensation*, occupational disease, unemployment compensation, or disability benefits law, or any similar law." [DE 32-2 at 15 (emphasis added)]. This exclusion of workers compensation obligations is specifically limited to the Employer's Liability Insurance portion (Part Two) of the Policy. [*Id.*]

Furthermore, Part Five of the Policy, titled "PREMIUM" states, in relevant part:

3

C. Remuneration

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. All your officers and employees engaged in work covered by this policy, and

2. all other persons engaged in work that could make us liable under Part One (Workers' compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as a premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

[DE 32-2 at 17].

The final relevant section of the Policy is Section H of Part One, titled "Statutory Provisions." [DE 32-2 at 14]. Here, the Policy states,

[American Interstate is] directly and primarily liable to any person entitled to the benefits payable by this insurance . . . . Jurisdiction over [J&B West] is jurisdiction over [American Interstate] for purposes of the workers compensation law. [American Interstate is] bound by decisions against [J&B West] under that law.

[DE 32-2 at 14]

On June 27, 2019, as is authorized by the Policy, American Interstate conducted an audit of J&B West's records. [DE 33 at 4; DE 32-2 at 17]. On September 17, 2019, based on information obtained in the audit, American Interstate sent a letter to J&B West demanding payment of additional premiums based upon Part One of the Policy providing for remuneration for risk arising from the employees of J&B West's subcontractors. [DE 32-1 at 1]. American Interstate's assessment of an additional

4

premium was based on J&B West's failure to obtain Certificates of Insurance from some of its subcontractors. [DE 32-3 at 1]. Specifically, the audit identified five subcontractors who did not have certificates of insurance or exclusion as described in Ind. Code § 22-3-2-14. J&B West paid these five subcontractors a total of $619,974. [DE 32-3 at 1].[1] Yet, J&B West refused to pay the additional premiums. Instead, J&B West filed the instant lawsuit seeking declaratory judgment that the premiums were not required.

To resolve the pending summary judgment motions, the Court must interpret the terms of J&B West's workers' compensation insurance policy ("the Policy"), issued by American Interstate, in light of Indiana's applicable workers' compensation laws.

## II.   ANALYSIS

### A.   Summary Judgment Standard

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Moore v. Vital Prod. Inc.*, 641 F.3d 253, 256 (7th Cir. 2011); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well as draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *King v. Preferred Technical Group*, 166 F.3d 887, 890 (7th Cir. 1999).

---

[1] Notably, no workers' compensation claims were asserted under the Policy, American Interstate made no payments thereunder, and J&B West has no hiring or firing authority over the employees of its subcontractors. [DE 32-4 at 2].

To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In other words, "[s]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted).

**B.     Discussion**

The primary issue in this case is whether American Interstate is entitled to recover additional premiums based on the risk associated with the employees of J&B West's subcontractors, particularly when J&B West failed to obtain certificates of insurance or exemption from those subcontractors. At its core, the parties' dispute centers around the relationship between Part One (Workers' Compensation Insurance) and Part Five (Premium) of the Policy.[2] "Under Indiana law, the interpretation of an

---

[2] The parties agree that Part Two of the Policy (Employer's Liability Insurance) does not apply here due to the Policy's clear language that Employee Liability Insurance is not related to any workers' compensation laws.

insurance policy presents a question of law to be decided by the court." *Nat'l Fire & Cas. Co. v. W. By & Through Norris*, 107 F.3d 531, 535 (7th Cir. 1997).

Section H of Part One of the Policy explicitly invokes Indiana's workers compensation laws. [DE 32-2 at 14]. More specifically, Section H states that "[t]erms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law." [DE 32-2 at 14].

The relevant provisions of the Indiana Workers' Compensation Act include Indiana Code § 22-3-2-14[3] and § 22-3-2-5[4]. These statutory provisions mandate that if a contractor sublets any contract for the performance of any work to a subcontractor, without obtaining a certificate of exemption, then they shall become liable to the same extent as such subcontractor for compensation for damages due to an accident arising out of the course of the performance of the work covered by such subcontract. Thus, in this case, the statute mandates that if J&B West were to fail to obtain a certificate of

---

[3] Indiana Code § 22-3-2-14(c) states:
> Any contractor who shall sublet any contract for the performance of any work, to a subcontractor subject to the compensation provisions of IC 22-3-2 through IC 22-3-6, without obtaining a certificate from the worker's compensation board showing that such contractor has complied with section 5 of this chapter, IC 22-3-5-1, and IC 22- 3-5-2, shall be liable to the same extent as such subcontractor for the payment of compensation, physician's fees, hospital fees, nurse's charges, and burial expenses on account of the injury or death of any employee of such subcontractor due to an accident arising out of and in the course of the performance of the work covered by such subcontract.

[4] Indiana Code § 22-3-2-5(a) states:
> Every employer who is bound by the compensation provisions of IC 22-3-2 through IC 22-3-6, . . . shall insure the payment of compensation to the employer's employees and their dependents in the manner provided in IC 22-3-3, or procure from the worker's compensation board a certificate authorizing the employer to carry such risk without insurance. While such insurance or such certificate remains in force, the employer or those conducting the employer's business and the employer's worker's compensation insurance carrier shall be liable to any employee and the employee's dependents for personal injury or death by accident arising out of and in the course of employment only to the extent and in the manner specified in IC 22-3-2 through IC 22-3-6.

7

exemption from the Worker's Compensation Board of Indiana for the work of a subcontractor, they could become secondarily liable for injuries suffered by the subcontractor's employees. *See* Ind. Code § 22-3-2-14. Moreover, J&B West's workers' compensation insurance carrier—American Interstate—would also be liable for the work-related injury or death of any employee of a J&B West subcontractor. *See* Ind. Code § 22-3-2-5.

  While J&B West appears to grasp the possibility of its secondary liability arising from the workers compensation statutes, it contends that any secondary liability it may incur will not result in actual liability exposure for itself or American Interstate. In support, J&B West relies partly on *Artificial Ice & Cold Storage Co. v. Waltz*, which states that "[t]he only effect of a failure of a person contracting for the performance of any work, to exact the certificate is to create a secondary liability for compensation on the part of the person so failing." 146 N.E. 826, 828–29 (Ind. Ct. App. 1925). Yet *Artificial Ice* does not eliminate actual liability exposure as J&B West suggests. Rather, *Artificial Ice* confirms that J&B West could be secondarily liable if it fails to exact the appropriate workers compensation certificate from a subcontractor. Practically speaking, that means that J&B West and American Interstate would be responsible for covering the costs of injuries for subcontractors' employees if the subcontractor cannot meet its primary liability obligations. Thus, Part Five of the Policy, defining the Policy's Premium, is implicated in the parties' dispute here.

  Part Five of the Policy states that remuneration is payable by J&B West to American Interstate during the policy period for the services of "all" of J&B West's

"offices and employees engaged in work covered by this policy, and *all other persons engaged in work* that *could* make [American Interstate] liable under Part One (Workers' Compensation Insurance) of this policy." [DE 32-2 at 17]. The Policy also states that if J&B West does "not have payroll records for these persons, the contract price for their services and materials may be used as a premium basis." [*Id.*] Finally, Part Five of the Policy concludes by stating that premium payments must not be made if J&B West can provide "proof that the employers of these persons lawfully secured their workers compensation obligations." [*Id.*] As such, pursuant to the terms of the Policy, premiums (in the form of remuneration payments) should be paid to American Interstate by J&B West for the employees of its subcontractors, particularly those for which J&B West failed to collect a Certificate of Insurance, because American Interstate could be liable, along with J&B West, for their workers compensation claims.

With that said, J&B West correctly asserts that the Indiana Workers' Compensation Act does not make an employee of a subcontractor an employee of another person. See *Lewis v. Lockard*, 498 N.E.2d 1024, 1026 (Ind. Ct. App. 1986). Thus, J&B West is not considered the employer of its subcontractors' employees. This does not obviate the fact that a general contractor who fails to obtain a certificate of compliance from its subcontractors still becomes secondarily liable under the Indiana Worker's Compensation Act for on-the-job injuries to a subcontractor's employees. Ind. Code § 22-3-2-14(c); *see also Wolf v. Kajima Intern., Inc.*, 621 N.E.2d 1128, 1132 (Ind. Ct. App. 1993) ("[A] general contractor has a statutory duty to require that each subcontractor obtain a certificate from the Worker's Compensation Board showing that the

9

subcontractor is either carrying worker's compensation insurance or has the financial ability to pay compensation to an injured employee."). Secondary liability, while not as immediate as primary liability, nevertheless represents a risk of liability to the general contractor.

Further J&B West contends—without dispute—that it does not exert significant control over the employees of J&B West's subcontractors. Admittedly, J&B West does not pay these employees directly, does not provide them with material or equipment, and has no hiring or firing power over them. Citing *Continental Casualty Company v. Alabama Emergency Room Administrative Services, P.C.*, J&B West likens its subcontractors' employees to the independent contractors of a hospital. 355 F. App'x 332 (11th Cir. 2009). In that case, the court held that because "the emergency room physicians in question are not employees of the Insured, neither the Insured nor Continental can be liable to them for payments required by the workers' compensation laws." *Id.* at 335. In other words, the Eleventh Circuit based its holding in *Alabama Emergency Room* on workers' compensation laws that preclude any liability to non-employees by an insured emergency room. Yet, the Indiana workers' compensation laws applicable in this case can be distinguished from those referenced in *Alabama Emergency Room*. As outlined above, Indiana's workers' compensation laws explicitly create the possibility of secondary liability for a general contractor like J&B West when employees of its subcontractors are injured on the job. *See* Ind. Code § 22-3-2-14. Thus, J&B West's reliance on *Alabama Emergency Room* is misplaced.

Finally, J&B West contends that it is entitled to summary judgment on the ground that American Interstate has not handled insurance liability claims related to subcontractor employees in the State of Indiana previously. J&B West suggests that this lack of previous claims indicates that the employees of J&B West's subcontractors pose no actual liability risk to American Interstate. To support this contention, J&B West has served Rule 34 requests for production of documents on American Interstate seeking evidence of the manner in which American Interstate has handled comparable claims in Indiana, and whether it has paid benefits on such claims.[5] The documents J&B West requested from American Interstate, even if produced, would not help J&B West's case here. After all, an event having not occurred in the past does not dictate the risk of that event occurring in the future. Therefore, any evidence that American Interstate has been liable for subcontractor workers' compensation claims in Indiana in the past is irrelevant. The fact that American Interstate admits that no claims were made against J&B West under the Policy and that American Interstate made no payments thereunder also does not preclude the risk of secondary liability. As such, J&B West could be exposed to secondary liability for injuries suffered by the employees of J&B West's subcontractors regardless of an absence of previous claims.

The Policy merely ensures that American Interstate is compensated for assuming J&B West's risk of secondary liability under Ind. Code § 22-3-2-5. J&B West does not dispute that American Interstate assumed that liability under the Policy as evidenced

---

[5] J&B West's request for production is the subject of its pending motion to compel. [DE 45].

11

by Section B of Part One of the Policy, which states that American Interstate "will pay promptly when due the benefits required of [J&B West] by the workers' compensation laws." [DE 32-2 at 13]. Section H.3 further adds that American Interstate is "directly and primarily liable to any person entitled to the benefits payable by this insurance." [*Id.* at 14]. As such, if J&B West were found secondarily liable for injuries to an employee of its subcontractors as is possible under Ind. Code § 22-3-2-14(c), American Interstate would be required to pay those benefits under the Policy. Accordingly, the employees of J&B West's subcontractors represent a risk to American Interstate—a risk for which American Interstate should be adequately compensated.[6]

Indeed, such compensation is consistent with the policy underlying both the insurance requirement set forth in Indiana's workers compensations laws and Part Five of the Policy American Interstate issued to J&B West. Under Ind. Code § 22-3-2-5(a), contractors, including subcontractors, are required to carry workers compensation insurance or secure permission to carry the related risk without insurance. Contractors like J&B West only incur secondary liability for injuries to their subcontractors' employees if they fail to secure verification of the subcontractors' workers compensation insurance or proof that they have been authorized not to carry the insurance. Ind. Code § 22-3-2-14(c). Under these requirements, J&B West is in the best position to avoid invocation of secondary liability for subcontractor employees. Similarly, J&B West is in the best position to prevent American Interstate from incurring

---

[6] This Court does not address the likelihood of such liability, merely that such liability *could* result under Indiana workers' compensation laws.

any liability for its subcontractors' employees. Part Five of the Policy establishes premiums to compensate American Interstate for any risk—including secondary liability for subcontractor employees—arising under the terms of the Policy. In this case, J&B West could have avoided additional premiums for subcontractor employees had it simply required the contractors to provide the statutory certificates of insurance. It did not. Therefore, American Interstate is entitled to collect premium payments from J&B West for its subcontractors as a matter of law. Accordingly, American Interstate is entitled to summary judgment.

With summary judgment entered in favor of American Interstate, J&B West's bad faith claim fails.

### III. CONCLUSION

For the reasons stated above, the Court **DENIES** J&B West's Motion for Partial Summary Judgment [DE 31] and **GRANTS** American Interstate's Motion for Summary Judgment [DE 39]. The Clerk is **INSTRUCTED** to enter judgment in favor of American Interstate. All other pending motions are **DENIED AS MOOT**.

**SO ORDERED** this 8th day of February 2021.

        s/Michael G. Gotsch, Sr.
        Michael G. Gotsch, Sr.
        United States Magistrate Judge